

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. )
)
VINCENT DELGIUDICE, )
    also known as "Uncle Mick," )
MATTHEW KNIGHT, )
    also known as "Sweaters" and )
    "McDougal," )
JUSTIN HINES, )
KEITH D. BENSON, )
TODD BLANKEN, )
NICHOLAS STELLA, )
MATTHEW NAMOFF, )
CASEY URLACHER, )
VASILIOS PRASSAS, and )
EUGENE DELGIUDICE, )
    also known as "Gino" )

No. **20 CR 111**

Violations: Title 18, United
States Code, Sections 371,
1955 and 1956

**JUDGE KENDALL**

**MAGISTRATE JUDGE FUENTES**

**FILED**

FEB 19 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COUNT ONE

The SPECIAL JANUARY 2019 GRAND JURY charges:

1.    At times material to this indictment:

    a.    Company A, located in Costa Rica, maintained an internet-based gambling platform through a website. An individual who accepted wagers from others on the outcome of sporting and other events (a "bookmaker") could, in return for the payment of a fee to Company A, provide access to Company A's website so that the bookmaker's customers could use the website to place wagers with the

bookmaker. The bookmaker collected and paid out money depending on the outcome of the bet(s) placed by the bookmaker's customer on the website.

        b.    Individuals 1 and 2 were affiliated with Company A.

        c.    There were in force and effect criminal statutes in the State of Illinois that prohibited gambling, including Chapter 720 Illinois Compiled Statutes, Sections 5/28-1(a)(2), (a)(5), (a)(11) and (a)(12), and 5/28-1.1(b) and (d).

    2.    Beginning no later than in or around 2016, and continuing until in or around 2019, at Chicago, Lemont, Frankfort, Orland Park, and Woodridge, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"
MATTHEW KNIGHT,
also known as "Sweaters" and"McDougal,"
JUSTIN HINES,
KEITH D. BENSON,
TODD BLANKEN,
NICHOLAS STELLA,
MATTHEW NAMOFF,
CASEY URLACHER,
VASILIOS PRASSAS, and
EUGENE DELGIUDICE,
also known as "Gino,"

defendants herein, together with Individuals 1 and 2 and others known and unknown to the Grand Jury, conspired to commit an offense against the United States, that is, to knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, in violation of Title 18, United States Code, Section 1955.

3.     It was part of the conspiracy that the defendants, together with others, agreed to knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, that is, a business involving sports bookmaking, in violation of the laws of the State of Illinois, including 720 Illinois Compiled Statutes, Sections 5/28-1(a)(2), (a)(5),  (a)(11), and (a)(12), and 5/28-1.1(b) and (d); which business was in substantially continuous operation for a period in excess of thirty days, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business.

4.     It was further part of the conspiracy that defendant VINCENT DELGIUDICE, also known as "Uncle Mick", conducted, managed, supervised, and directed a multi-million dollar illegal gambling business based in the greater Chicago area which accepted wagers from as many as approximately 1,000 gamblers on the outcome of sporting events including major league baseball, college and professional basketball, professional and college football and other professional and amateur sporting events.

5.     It was further part of the conspiracy that VINCENT DELGIUDICE paid Company A more than $10,000 a month for a website, www.unclemicksports.com, which was used to manage the accounting, betting, record keeping and logistics of the illegal gambling business.  Gamblers used this website to view odds, place wagers on sporting events, and see winnings and losses.

3

6. It was further part of the conspiracy that VINCENT DELGIUDICE recruited gamblers for the illegal gambling business, provided gamblers with gambling accounts on www.unclemicksports.com, and unique log-ins and passwords to this website, and regularly communicated with the gamblers. VINCENT DELGIUDICE collected and paid out money in cash to the gamblers whom he had recruited.

7. It was further part of the conspiracy that VINCENT DELGIUDICE recruited MATTHEW KNIGHT, also known as "Sweaters" and "McDougal," CASEY URLACHER, JUSTIN HINES, KEITH D. BENSON, TODD BLANKEN, NICHOLAS STELLA, MATTHEW NAMOFF, and VASILIOS PRASSAS (collectively, the "agent-defendants") and others to work as agents for the illegal gambling business. The agent-defendants and other agents recruited sub-agents and additional gamblers for the illegal gambling business and supervised and regularly communicated with the sub-agents and gamblers whom they recruited.

8. It was further part of the conspiracy that VINCENT DELGIUDICE paid the agent-defendants, other agents, and the sub-agents a commission based upon a percentage of their recruited gamblers' gambling losses.

9. It was further part of the conspiracy that VINCENT DELGIUDICE used a cellphone to access the www.unclemicksports.com website and monitor betting by gamblers, the agent-defendants, and others.

4

10. It was further part of the conspiracy that VINCENT DELGIUDICE regularly communicated, using coded language and otherwise, with the agent-defendants, other agents and the sub-agents, in person and in conversations and text messages over cellphones concerning the placing of wagers, the collection and paying out of money in cash to the gamblers, and other matters concerning the operation of the illegal gambling business.

11. It was further part of the conspiracy that typically, on a weekly basis, individuals affiliated with Company A, including Individuals 1 and 2, communicated information to VINCENT DELGIUDICE about how the gamblers and agents had performed, i.e., whether they had won or lost money on that week's wagers. This information was sometimes communicated by an anonymous, end-to-end encrypted, secure communication telephone application called "Threema," to ensure that the communications remained secret. Based upon this information, VINCENT DELGIUDICE, the agent-defendants, other agents, and sub-agents arranged, depending on the outcome of the placed wagers, to collect payment for losses from gamblers, and to pay gamblers for winning bets.

12. It was further a part of the conspiracy that VINCENT DELGIUDICE, the agent-defendants, other agents, and the sub-agents regularly met with the gamblers whom they had recruited to collect money in cash the gamblers had lost on wagers, or pay out money in cash on wagers which the gamblers had won. The co-conspirators and the gamblers referred to this as "settling up." EUGENE

DELGIUDICE, also known as "Gino," assisted in the collection and paying out of money in cash to gamblers whom had been recruited by VINCENT DELGIUDICE. TODD BLANKEN assisted in the collection and paying out of money in cash to gamblers recruited by JUSTIN HINES, MATTHEW KNIGHT and VINCENT DELGIUDICE.

13.     It was further part of the conspiracy that the agent-defendants, other agents and the sub-agents delivered and caused the cash which they collected from the gamblers to be delivered to VINCENT DELGIUDICE.

14.     It was further part of the conspiracy that VINCENT DELGIUDICE directed EUGENE DELGIUDICE to meet gamblers and collect money owed by gamblers for losses or pay money to the gamblers for their winnings.  EUGENE DELGIUDICE delivered the money he collected to VINCENT DELGIUDICE or left it at DELGIUDICE's residence.

15.     It was further part of the conspiracy that VINCENT DELGIUDICE accepted payments from the agent-defendants, other agents, sub-agents and gamblers; maintained gambling records; and stored cash, gold bars, and other proceeds of the illegal gambling business at his residence in Orland Park, Illinois.

16.     It was further part of the conspiracy that, in order to conceal the money which he made from the illegal gambling business, VINCENT DELGIUDICE:

    a.     purchased money orders with cash, and used the money orders to pay his personal expenses;

6

   b. directed gamblers and agents who owed him money from gambling losses to pay his personal expenses and the expenses of his family such as his childrens' college tuition, and other such expenses;

   c. directed gamblers and agents who owed him money from gambling losses to purchase cashier's checks made payable to companies which VINCENT DELGIUDICE owned and/or controlled; and

   d. directed gamblers and agents who owed him money from gambling losses to purchase cashier's checks made payable to companies which were controlled or managed by Company A.

 17. It was further part of the conspiracy that VINCENT DELGIUDICE used Federal Express to deliver cashier's checks purchased by gamblers and agents who owed him money from gambling losses to Company A in Costa Rica to cover the fees associated with the operation of the www.unclemicksports.com website.

 18. It was further a part of the conspiracy that the defendants did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden the purposes of and the acts done in furtherance of the conspiracy.

<strong><u>Overt Acts</u></strong>

 19. In furtherance of the conspiracy and to effect its objects, the defendants, together with Individuals 1 and 2 and others, committed and caused to be committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

7

a.     On or about October 24, 2016, VINCENT DELGIUDICE sent a text message to Gambler A stating, "66,789– Plse confirm and 10 this week if possible."

b.     On or about November 22, 2016, at Chicago, VINCENT DELGIUDICE met with Gambler A and collected a payment of $10,000 representing gambling losses owed by Gambler A to VINCENT DELGIUDICE.

c.     On or about September 12, 2018, MATTHEW KNIGHT met a gambler in Frankfort, Illinois and collected $500 in gambling losses from the gambler.

d.     On or about October 10, 2018, VINCENT DELGIUDICE sent two cashier's checks totaling approximately $21,700 by Federal Express from Orland Park, Illinois to pay the fees of Company A for operating and maintaining the gambling website.

e.     On or about October 27, 2018, MATTHEW KNIGHT sent a text message to Gambler A, which read, "Morning Bronco, going through figs, can you please tell Bronco 33 to pay or play, hasn't played since February, down 938."

f.     On or about October 29, 2018, VINCENT DELGIUDICE and MATTHEW KNIGHT discussed amounts owed to and by certain gamblers.

g.     On or about November 19, 2018, MATTHEW KNIGHT sent a message to a gambler, "Owe u 2254, will drop."

h.     On or about December 11, 2018, TODD BLANKEN and

8

VINCENT DELGIUDICE talked by telephone and discussed money owed by gamblers, and meeting gamblers to collect money for gambling losses.

i.     On or about December 12, 2018, EUGENE DELGIUDICE met Gambler B in Woodridge, Illinois and collected money constituting gambling losses owed by Gambler B to VINCENT DELGIUDICE.

j.     On or about December 14, 2018, JUSTIN HINES spoke with VINCENT DELGIUDICE by phone and said that he had ten "guys" who lose $15,000 a year.

k.     On or about December 16, 2018, CASEY URLACHER asked VINCENT DELGIUDICE to create an online log-in and password for a new gambler on VINCENT DELGIUDICE's gambling website.

l.     On or about December 16, 2018, VINCENT DELGIUDICE called Company A and asked for a log-in and password for a new gambler for CASEY URLACHER with a $500 maximum bet, a maximum wager for the week of $3,000 and a $1,000 settle up figure.

m.     On or about December 17, 2018, MATTHEW NAMOFF called VINCENT DELGIUDICE to discuss problems with VINCENT DELGIUDICE's gambling website.

n.     On or about December 17, 2018, agent TODD BLANKEN and VINCENT DELGIUDICE talked by phone and discussed meeting gamblers to collect money owed for gambling losses.

o. On or about December 19, 2018, VINCENT DELGIUDICE and NICHOLAS STELLA exchanged text messages concerning NICHOLAS STELLA's gamblers and STELLA stated, "Between my two big losers in Minnesota, they've dumped 73k."

p. On or about December 20, 2019, EUGENE DELGIUDICE met Gambler B in Woodridge, Illinois and collected money constituting gambling losses owed by Gambler B to VINCENT DELGIUDICE.

q. On or about December 21, 2018, in Oak Brook, Illinois, CASEY URLACHER gave VASILIOS PRASSAS an envelope containing gambling debts owed to VINCENT DELGIUDICE.

r. On or about December 21, 2018, in Oak Brook, Illinois, VASILIOS PRASSAS gave an envelope containing gambling debts owed by CASEY URLACHER to VINCENT DELGIUDICE, stating, "This is Casey's."

s. On or about December 26, 2018, CASEY URLACHER spoke by phone with VINCENT DELGIUDICE and asked VINCENT DELGIUDICE to shut down Gambler C's account until Gambler C paid a gambling debt.

t. On or about December 26, 2018, VINCENT DELGIUDICE contacted Company A and asked Individual 2 to shut down Gambler C's account.

u. On or about December 26, 2018, after Gambler C wired CASEY URLACHER $3,000, CASEY URLACHER texted DELGIUDICE and directed VINCENT DELGIUDICE to turn Gambler C's account back on.

v.     On or about December 27, 2018, JUSTIN HINES told a gambler by text message that he was "down 1450."

w.     On or about December 28, 2018, NICHOLAS STELLA spoke by phone with VINCENT DELGIUDICE and complained that Company A had taken a game down.

x.     On or about January 6, 2019, VINCENT DELGIUDICE told TODD BLANKEN by phone that he had 1,006 "customers" and had won $100,000, or about $100 per player.

y.     On or about January 10, 2019, KEITH BENSON purchased a cashier's check made payable, at VINCENT DELGIUDICE's instruction, to a company that was controlled and managed by Company A.

z.     On or about January 11, 2019, TODD BLANKEN sent multiple text messages to a gambler and set up a meeting to collect a $1,500 payment on the gambling debt the gambler owed.

aa.     On January 15, 2019, KEITH BENSON and VINCENT DELGIUDICE discussed gambling limits for a gambler and BENSON stated that he was able to log into the gambling website as an administrator.

bb.     On or about January 19, 2019, MATTHEW NAMOFF and VINCENT DELGIUDICE discussed collecting money from a gambler and VINCENT DELGIUDICE told MATTHEW NAMOFF to state that he is "with Mr. Delgiudice."

cc.     On or about January 21, 2019, VASILIOS PRASSAS texted

11

VINCENT DELGIUDICE and told him he was trying to "collect" and would meet with VINCENT DELGIUDICE later.

dd.     On or about January 21, 2019, KEITH BENSON asked VINCENT DELGIUDICE to help him place a bet for a gambler who wanted to wager $5,000 on a sporting event.

ee.     On or about January 22, 2019, NICHOLAS STELLA sent a text message to VINCENT DELGIUDICE asking DELGIUDICE to send a message directing gamblers to "settle up" after the Super Bowl.

ff.     On or about January 28, 2019, VINCENT DELGIUDICE prepared a note listing the amount of money due from JUSTIN HINES' gamblers for the previous week's betting, and texted it to JUSTIN HINES.

gg.     On or about January 28, 2019, VINCENT DELGIUDICE prepared a note listing the amount of money due from NICHOLAS STELLA'S gamblers for the previous week's betting, and texted it to NICHOLAS STELLA.

hh.     On or about January 28, 2019, MATTHEW NAMOFF called VINCENT DELGIUDICE and discussed a new gambler who wanted to wager large bets with NAMOFF.

ii.     On or about February 1, 2019, CASEY URLACHER met VINCENT DELGIUDICE in Lemont, Illinois, and paid him money owed for gambling losses.

jj.     On or about February 7, 2019, VINCENT DELGIUDICE told

12

EUGENE DELGIUDICE by telephone the amounts owed by his gamblers.

        kk.    On or about February 7, 2019, KEITH BENSON and VINCENT DELGIUDICE discussed by phone wagers that had been placed on the Super Bowl.

        ll.    On or about February 7, 2019, EUGENE DELGIUDICE asked VINCENT DELGIUDICE if he wanted EUGENE DELGIUDICE to stack and count the money he collected from DELGIUDICE's gamblers.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

Beginning no later than in or around 2016, and continuing until in or around 2019, at Chicago, Lemont, Frankfort, and Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"
MATTHEW KNIGHT,
also known as "Sweaters" and "McDougal,"
JUSTIN HINES,
KEITH D. BENSON,
TODD BLANKEN,
NICHOLAS STELLA,
MATTHEW NAMOFF,
CASEY URLACHER,
VASILIOS PRASSAS, and
EUGENE DELGIUDICE,
also known as "Gino,"

defendants herein, together with others known and unknown to the Grand Jury, did knowingly conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, that is, a business involving sports bookmaking, which business was in substantially continuous operation for a period in excess of thirty days, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business, and which was in violation of the following laws of the State of Illinois: 720 Illinois Compiled Statutes, Sections 5/28-1(a)(2), (a)(5), (a)(11), and (a)(12), and 5/28-1.1(b) and (d);

In violation of Title 18, United States Code, Sections 1955 and 2.

14

## COUNT THREE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     Paragraph One of this indictment is incorporated here.

2.     Beginning no later than in or around March 2018 and continuing until on or about March 18, 2019, at Orland Park in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did conspire with Individuals 1 and 2 and with others known and unknown to the Grand Jury, to knowingly transport, transmit, and transfer, and cause to be transported, transmitted, and transferred, monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

*Illegal Gambling Business*

3.     It was part of the conspiracy that VINCENT DELGIUDICE conducted, managed, supervised, and directed an illegal gambling business based in the greater Chicago area which accepted wagers on the outcome of sporting events including major league baseball, college and professional basketball, professional and college football and other professional and amateur sporting events.

15

4. It was further part of the conspiracy that VINCENT DELGIUDICE paid Company A more than $10,000 a month for a website, www.unclemicksports.com, maintained in Costa Rica, which was used to manage the accounting, betting, recordkeeping and logistics of the illegal gambling business. Gamblers used this website to view odds, place wagers on sporting events, and see winnings and losses.

5. It was further part of the conspiracy that VINCENT DELGIUDICE recruited gamblers for the illegal gambling business, provided gamblers with gambling accounts on www.unclemicksports.com, and unique log-ins and passwords to this website, and regularly communicated with the gamblers. VINCENT DELGIUDICE collected and paid out money in cash to the gamblers whom he had recruited.

6. It was further part of the conspiracy that VINCENT DELGIUDICE recruited more than five individuals to work as agents for the illegal gambling business. The agents recruited additional gamblers for the illegal gambling business and supervised the gamblers whom they recruited. The agents provided the gamblers with gambling accounts on www.unclemicksports.com; monitored and tracked their betting on the website; and collected and paid out money in cash to the gamblers whom they had recruited. VINCENT DELGIUDICE paid the agents a commission based upon a percentage of their recruited gamblers' gambling losses.

7. It was further part of the conspiracy that VINCENT DELGIUDICE used a cellphone to access the www.unclemicksports.com website and monitor betting by

16

gamblers, the agent, and others.

8.     It was further part of the conspiracy that workers at Company A, including Individuals 1 and 2, communicated information to VINCENT DELGIUDICE about how the gamblers and agents had done, *i.e.*, whether they had won or lost money on that week's betting.   This information was sometimes communicated by an anonymous, end-to-end encrypted, secure communication telephone application called "Threema" to ensure that the communications remained secret.   Based upon this information, VINCENT DELGIUDICE and the agents arranged to collect payment for losses from gamblers, and to pay gamblers for winning bets.

9.     It was further a part of the conspiracy that VINCENT DELGIUDICE and the agents collect money in cash which the gamblers had lost on wagers, and paid out money in cash on wagers which the gamblers had won.

*Delivery of Gambling Proceeds to Costa Rica*

10.     It was further part of the conspiracy that Individuals 1 and 2, and others who worked for or were associated with Company A, instructed VINCENT DELGIUDICE to obtain certified checks in the names of various entities and to send the cashier's checks via Federal Express to a specified address in Costa Rica in payment for the fees associated with the operation of the www.unclemicksports.com website used by the illegal gambling business.

11.     It was further part of the conspiracy that Individuals 1 and 2, and others

17

who worked for or were associated with Company A:

      a.     supplied VINCENT DELGIUDICE with the names of the entities to whom the certified checks were to be made payable to;

      b.     supplied VINCENT DELGIUDICE with addresses in Costa Rica where the Federal Express packages containing cashier's checks were to be sent;

      c.     directed VINCENT DELGIUDICE to place the cashier's checks inside an envelope, then inside a larger manila envelope, then inside a magazine and then inside a Federal Express envelope, in order to conceal the checks before express mailing them; and

      d.     directed VINCENT DELGIUDICE to state, if asked, that the Federal Express packages contained "documents."

12.     It was further part of the conspiracy that VINCENT DELGIUDICE directed gamblers and agents who lost wagers and owed money to the illegal gambling operation to pay their debts by purchasing cashier's checks and money orders made payable to entities identified by Individuals 1 and 2, and others who worked for or were associated with Company A.

13.     It was further part of the conspiracy that VINCENT DELGIUDICE used Federal Express to cause the cashier's checks and money orders to be delivered to the addresses in Costa Rica supplied by Individuals 1 and 2, and others who worked for or were associated with Company A.

14.    It was further part of the conspiracy that VINCENT DELGIUDICE caused a total of at least 12 cashier's checks totaling at least $113,625 to be express-mailed via Federal Express in Orland Park, Illinois to an address in Costa Rica.

15.    It was further a part of the conspiracy that the defendant and his co-conspirators did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden, the purposes of and the acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNT FOUR

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about March 29, 2018, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did knowingly transport, transmit, and transfer, cause to be transported, transmitted, and transferred, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, that is VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express five cashier's checks and money orders in the amounts of $14,000 (Chase Cashier's Check No. 9210816068), $5,000 (Huntington Check No. 658248), and three $1,000 BB&T Personal Money Orders (Nos. 6000245954, 6000245952, and 6000245955), to an address in Costa Rica;

In violation of Title 18, United States Code, Sections 1956(a)(2)(A).

## COUNT FIVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about May 29, 2018, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did transport, transmit, and transfer, cause to be transported, transmitted and transferred, and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, that is, VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express a cashier's check in the amount of $12,000 (Chase Cashier's Check No. 1408521531), and a number of Western Union money orders, including Western Union Money Order 17-754980862, in the amounts of $500 each, to an address in Costa Rica;

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

## COUNT SIX

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about July 5, 2018, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did transport, transmit, and transfer, cause to be transported, transmitted and transferred and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, that is, VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express two cashier's checks in the amounts of $10,000 (US Bank Cashier's Check 4365506379) and $5,000 (Huntington Cashier's Check 2012476565), to an address in Costa Rica;

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

22

## COUNT SEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about October 10, 2018, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did transport, transmit, and transfer, cause to be transported, transmitted and transferred and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955 that is, VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express two cashier's checks in the amounts of $10,000 (Chase Cashier's Check No. 9210816785) and $11,700 (Chase Cashier's Check No. 9439727569), to an address in Costa Rica;

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

## COUNT EIGHT

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about December 17, 2018, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did transport, transmit, and transfer, cause to be transported, transmitted and transferred and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, that is, VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express two cashier's checks in the amounts of $10,000 (TCF Cashier's Check No. 305929064) and $10,500 (Chase Cashier's Check No. 1408522567), to an address in Costa Rica;

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

## COUNT NINE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about January 14, 2019, at Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere,

VINCENT DELGIUDICE,
also known as "Uncle Mick,"

defendant herein, did transport, transmit, and transfer, cause to be transported, transmitted and transferred and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, that is, VINCENT DELGIUDICE caused to be mailed from Orland Park, Illinois, by Federal Express three cashier's checks in the amounts of $10,200 (Chase Cashier's Check No. 9470334046), $8,500 (Lemont Bank and Trust Check No. 131067), and $6,725 (Cashier's Check 7142515696), to an address in Costa Rica;

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

25

## FORFEITURE ALLEGATION ONE

The Special JANUARY 2019 GRAND JURY alleges:

1.  Upon conviction of an offense in violation of Title 18, United States Code, Section 1955, as set forth in this indictment, VINCENT DELGIUDICE shall forfeit to the United States of America any property which constitutes and is derived from proceeds which were obtained, directly and indirectly, from offenses committed in violation of Title 18, United States Code, Section 1955, as well as property involved in and used to facilitate the offense, as provided in Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c).

2.  The property to be forfeited includes, but is not limited to:

    a.  The following specific property:

        i.   $1,060,792 in cash seized by law enforcement from defendant's residence on or about April 15, 2019; and

        ii.  gold coins valued at $92,623 seized by law enforcement from defendant's residence on or about April 15, 2019; and

        iii. silver bars and jewelry valued at $347,895 seized by law enforcement from defendant's residence on or about April 15, 2019; and

        iv.  A 2017 Lexus GX automobile identified by Vehicle Identification Number JTJJM7FX3H5173769.

    b.  The following real estate: 15708 Shire Drive, Orland Park, Illinois, further described as Lot 2 in equestrian place, South, being a subdivision of part of the Southeast ¼ of Section 17, Township 36 North, Range 12, East of the third principal meridian in Cook County, Illinois, PIN 27-17-312-021-0000

    c.  A personal money judgment in the amount of $8,000,000.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

## FORFEITURE ALLEGATION TWO

The SPECIAL JANUARY 2019 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1956, as set forth in this indictment, VINCENT DELGIUDICE shall forfeit to the United States of America any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

2.     The property to be forfeited includes, but is not limited to a personal money judgment in the amount of at least approximately $113,625.

3.     If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

28